**BILBO et al. v. THRELKELD et al.**

No. 22381.   Opinion Filed Dec. 6, 1932.

Rehearing . Denied Jan. 3, 1933.

Kelley & Grigsby and Don Welch, for plaintiffs in error.

Reuel W. Little, for defendants in error.

KORNEGAY, J. · This was a suit by a drilling contractor to recover a balance on account of $3,597.45 for drilling three oil wells on 30 acres of ground in section 30, twp. 5 S., R. 6 E., brought against Geo. W. Bilbo and others. A general statement in the brief of plaintiffs in error is as follows:

"S. R. Threlkeld brought a suit in the district court of Marshall county, Okla., to recover the sum of $3,597.45, with interest and attorney's fees, and to foreclose a lien claimed by him for such sums. upon a producing oil and gas lease in Marshall county. There were several defendants in the case, who now appear as plaintiffs in error, but all of them were purely formal parties except Geo. W. Bilbo and the Bilbo Oil Trust, a trust estate, erroneously referred to in many places in the record as 'the Bilbo Oil Company.'

"The defendants by appropriate pleadings brought into the case one W. M. Hewitt, who thereupon filed his cross-petition seeking to recover from the defendants the sum of $401.50, with interest and attorney's fees, and seeking further to foreclose a lien claimed by him for such sums upon the same lease.

"The case was tried to a jury. Threlkeld obtained a verdict for $2,669.95, with interest at six per cent. from November 1, 1929, and $266.99 attorney's fee, and Hewitt obtained a verdict for $401.50, with interest at six per cent. from September 15, 1929, and $75 attorney's fee. Judgments were entered in accordance with these verdicts, and motions for new trial were filed and overruled. This appeal follows.

"One P. E. Vail after the judgments were entered sought to bring himself into the case, claiming that he and Hewitt were partners and that he had a one-half interest in the Hewitt judgment. This contention of his has never been passed on by the trial court, but out of caution he was made a defendant in error in this court."

In the petition the account is confined to the claim for work on the 30 acres. In the answer, payment in full is claimed in paragraph 3. In paragraph 4, complaint is made of the work on well No. 1 and a statement of the contract is set out, and the following appears:

"* * * And it was further specifically understood and agreed by and between the plaintiff and this defendant, and the same formed part of the consideration for the said agreement, that in the event the said plaintiff should fail, neglect, or refuse to drill and complete the said well to the said depth of 700 feet, or until the Bilbo sand should be encountered, that he would not be entitled to any compensation for the drilling of said well, but that he would immediately drill another well upon the said leasehold estate, under the same identical terms and provisions."

There were allegations as to negligence in operations, resulting in casing loss and loss of well, with claims for damages.

A statement of the amount of the work was made in paragraph 9 of the answer, showing total credits $4,060, total payments $3,492.45, and a claim for negligent loss of casing $637.40 in well No. 1, thus giving rise to a balance claim of $69.45.

A reply was made giving a statement of all transactions between the parties beginning with the "Johnson well," January 3, 1929, and recapitulation makes balance claimed $3,597.45.

Amendments were made to the answer and cross-petition as to other parties having claims against the property arising from the operations, and prayer was to make them parties so that the claims might be adjudicated, and W. M. Hewitt presented a claim for $401.50 for tools borrowed to "fish" for lost tools in No. 1, that were not

returned, these having been also lost. The case was tried by jury, and it rendered verdict allowing plaintiff his claim less $927.50, and allowing the tool owner the amount claimed, and foreclosing liens on the property accordingly. On the trial the main witnesses were the parties, and practically all the questions were questions of fact.

The case-made is lengthy and contains a good deal of unnecessary matter and extra paging. Perhaps the court reporter did not charge, however, for the praecipe for summons and the summons for the answering parties. During the trial the attorneys and court participated in the examination of the witnesses. The defendants desired a peremptory instruction, but the court refused this and gave a few short instructions, some being excepted to by plaintiffs in error.

Complaint is made in various assignments of error by plaintiffs in error, but they argue five propositions. The first is that the court erred in rendering a personal judgment against George W. Bilbo. Undoubtedly, if under this record there was anything due the plaintiff, defendant Bilbo was personally liable, and the property he was managing was liable under the lien law. We are not favored with any citations of authority to the contrary. Under the head of "Errors of Law Occurring at the Trial," argument is made as to the detrimental effect on the contentions of the defendants below produced by the conduct of the court in the examination of witnesses. Some of the conduct was excepted to, some not. The other side claim that they fared just as badly.

An inspection of the record and the evidence and the jury's verdict, however, does not indicate that plaintiffs in error were actually hurt. Several authorities are cited on the subject, but each case must be decided on its own peculiar surroundings. Sometimes, judges being human beings, give way to passion when provoked by attorneys, each forgetful of the respect that is due each to the other, and above all else to the court of which they are both officers. As applied to the present case, there were not such exhibitions of passion that would lead a person ordinarily to think a miscarriage of justice would result, and in view of the deduction made by the jury, in favor of plaintiff in error, it appears that the jury were not very seriously affected.

In proposition 3 complaint is made about not allowing proof as to a "general contract custom" to stop at the Arbuckle sand. In view of the allegation as to drilling another well in the event of a failure to reach 700 feet, it is clear that the custom sought to be proven, would have neither added to nor taken from the facts essential to determine the rights of the parties, in view of the pleadings and statements of the parties. The testimony and statements showed a producing well in the Arbuckle sand, and a stopping there, and all parties acting on the theory of having found paying production.

In proposition 4, complaint is made of refusal to give instruction, as follows:

"You are further instructed with reference to the work done on well No. 1, after the drilling of well No. 2, that the deepening of No. 1 was made necessary by the negligent acts of plaintiff and his employees, while under the supervision of plaintiff, then he would only be entitled to not more than $2.50 per foot for such drilling, provided you find by a fair preponderance of the evidence that the original contract was to the effect that the wells should be drilled to 700 feet, or until oil or gas was found in paying quantities."

The record shows this to have been given. However, it was favorable to defendant. Probably an "if" was intended to be in it. Complaint is made, in proposition 5, of instruction No. 2, as follows:

"You are instructed that it is admitted by both the plaintiff, Threlkeld and the defendant, Bilbo, as trustee and as an oil company, that the plaintiff was employed by the defendant to drill wells numbered 1, 2 and 3 on the Sullivan lease at the price of $2.50 per foot, and that any use of drilling machinery and hands while they were not making hole, that there should be a charge of $35 per day for their use. The only difference in the terms of the contract, which becomes a question of fact in this case is on the part of the plaintiff that there was no depth specified for drilling of these wells, and on the part of the defendant is claimed that the wells were to be drilled 700 feet, unless oil in paying quantities was produced at a lesser depth."

An examination of the record is convincing that the court did not err in thus stating the points of contention. There does not seem to be any serious contention as to the judgment in favor of H. W. Hewitt. Finding no reversible error in the proceedings to the prejudice of plaintiffs in error, the judgments are affirmed. Supersedeas bond has been given to supersede each judgment. Judgment having been asked to be here rendered on the supersedeas bonds,

it is ordered that judgment thereon be entered in accordance with its terms, and that journal entry be prepared by the attorneys for defendants in error and submitted for approval to the attorneys for plaintiffs in error, and upon approval the clerk enter it on the journal. In the event the parties do not agree as to the form of journal entry, the clerk will prepare the same under direction of the court.

RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. LESTER, C. J., and CLARK, V. C. J., absent.